**Constantine ECONOMOU, Plaintiff–Appellant,**

v.

**Louis D. CALDERA, Secretary, United States Department of Army, Defendant–Appellee.**

**Docket No. 01–6068.**

United States Court of Appeals, Second Circuit.

Argued Oct. 22, 2001.

Decided April 5, 2002.

Constantine Economou, Pro Se, Patchogue, NY, for Plaintiff–Appellant.

Ramon E. Reyes, Jr., Assistant United States Attorney, Southern District of New York, New York, NY, for Defendant–Appellee.

Before FEINBERG, OAKES, F.I. PARKER, Circuit Judges.

F.I. PARKER, Circuit Judge.

Constantine Economou appeals pro se[1] from the judgment of the United States District Court for the Southern District of

---

1. Although Mr. Economou is pro se on this appeal, he was acting with counsel at all material times throughout the proceedings below. Mr. Economou argues that the counsel noted on his initial application to the Merit Systems Protection Board ("MSPB") was unavailable during his dealings with that agency and that he should not be considered as "counseled" during his MSPB inquiries. The record demonstrates, however, that Economou's counsel represented him during his prior EEO complaints and received copies of all Mr. Economou's filings with the MSPB. As such, this Court finds that Economou had "access to a means of acquiring knowledge of his rights and responsibilities" under the administrative scheme and will consider him as counseled during the course of the administrative proceedings. *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir.1978); *see also Angotti v. Kenyon & Kenyon*, 929 F.Supp. 651, 658 (S.D.N.Y.1996)(noting authority for denying equitable relief from misinterpretation of EEOC regulations to parties represented by counsel).

New York (Andrew J. Peck, *Magistrate Judge*)[2] dismissing plaintiff's complaint, entered on February 22, 2001, in accordance with a September 22, 2000 Opinion and Order granting summary judgment to Louis Caldera, Jr., Secretary of the Army, on plaintiff Economou's discriminatory and retaliatory removal and investigations claims, reasonable accommodation claim, and denial of performance rating claim. Economou does not challenge the jury verdict entered by the same February 22, 2001 order finding for the defendant on Economou's retaliatory denial of training claim.

## I.

Economou argues that the district court erred in granting summary judgment to his employer, the Army Corps of Engineers, on his claims that the Army discriminated against him because of his age (sixty-nine at the time of his dismissal), national origin (Greek), and disability (carpal tunnel syndrome), and retaliated against him because of his previous complaints of discrimination, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, 29 U.S.C. §§ 701–794, by removing him from employment on December 19, 1997, conducting unnecessary investigations of him during his term of employment, denying him appropriate accommodation for his

disability, and refusing to conduct an annual performance review prior to his termination in 1997. *Economou v. Caldera*, No. 99–CIV–12117, 2000 WL 1844773, at *1 (S.D.N.Y., Dec. 18, 2000). Although we affirm the majority of these determinations for substantially the same reasons stated by the district court, we address the district court's grant of summary judgment on Economou's removal claim more thoroughly because of the important issue of administrative exhaustion it raises.

## II.

■ Economou is a seventy-two-year-old Greek American engineer who in 1997 was removed from employment with the Army Corps of Engineers after twenty-nine years of service. In August 1997, the Army instituted removal proceedings against Economou based on allegations that "he made false and fraudulent statements, *i.e.*, overstated and altered receipts for taxi expenses, on three travel reimbursement vouchers" in 1996 and 1997. *Economou*, 2000 WL 1844773, at *5–*6. After a hearing, the Army issued a Notice of Decision dated December 17, 1997, informing Economou of his removal effective December 19, 1997, and alerting him that (1) he could appeal to the Merit Systems Protection Board ("MSPB") to contest the action and (2) if Economou believed that the action was discriminatory, he could appeal to the New York District Equal Employment Office ("EEO").[3] *Id.* at *7.

---

**2.** Magistrate Judge Peck was proceeding by consent of the parties. *See* 28 U.S.C. § 636(c).

**3.** On appeal, Economou argues that the Army's Notice of Decision "misinforms, misleads and entraps the claimant" by failing to make clear that a potential claimant may file initially with *either* the MSPB *or* the EEO, but not both. This Court has found equitable relief appropriate when an agency misleads or misdirects a claimant so as to prevent the

claimant from seeking an administrative remedy. *See South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11–12 (2d Cir.1994); *Miller v. Int'l. Tel. and Tel., Corp.*, 755 F.2d 20, 25 (2d Cir. 1985); *Smith v. Am. President Lines, Ltd.*, 571 F.2d 102, 109 (2d Cir.1978). The Notice of Decision in this case, however, does not create the need for such relief. While not specifically stating that a claimant may bring an initial appeal to either the MSPB or the EEO, the Notice alerted Economou to the availabili-

## A. Administrative Proceedings

Economou was no stranger to the administrative review process. In February 1997, Economou filed a formal EEO complaint challenging the process by which his performance during the 1995–1996 term had been evaluated and alleging that he was denied training and performance awards provided to other workers. Six months later, Economou filed two formal EEO complaints alleging retaliation for his prior filing. On October 4, 1997, Economou filed another formal compliant with the EEO alleging that his proposed removal from Army employment reflected discrimination on the basis of national origin and retaliation for his prior EEO activities.

After receiving the Army's December 19, 1997 Notice of Decision, Economou again sought help from the EEO, filing, on January 7, 1998, a "Request for Assignment of EEO Counselor"—a preliminary step towards pursuing a formal EEO complaint. Rather than wait for a response from the EEO, however, on January 14, 1998, Economou filed a mixed case appeal[4] with the MSPB. In his appeal, Economou contended that the Army had committed procedural errors in effectuating his removal and that the removal was in retaliation for his prior EEO activity and in continuation of an on-going pattern of discrimination that violated Title VII. *Id.* at *9. On the MSPB application form, Econo-

mou indicated that he had filed a formal complaint with another agency (the EEO) concerning the same matter, but noted that "the case [was] in the precomplaint stage."

On January 20, 1998, the MSPB, based on Economou's indication that he was also pursuing EEO remedies, issued an Order to Show Cause instructing Economou to demonstrate that the case was within the MSPB's jurisdiction. The order explained that if Economou had already filed a formal complaint with the EEO, the MSPB would not have jurisdiction until thirty days after the resolution of the complaint by the EEO or 120 days after filing. *Id.* In response to the order, Economou sent a reply dated February 10, 1998, indicating that he was "[p]resently ... pursuing [his] case through the EEOC avenue." The MSPB continued to pursue the jurisdictional question in a telephone conference on March 6, 1998. Following that conference, Economou submitted a letter to the MSPB reiterating his wish to remain in the EEO process and attaching a formal complaint he had filed with the EEO on March 5, 1998, well after his earlier MSPB filing, alleging that he had been removed from employment based on his Greek origin, physical disability, and age. During a second telephone conference, on April 1, 1998, Economou informed the MSPB that he was withdrawing his appeal. Based on

---

ty of the two remedies, explaining that discrimination claims should be pursued with the EEO, and referred the recipient to each body's procedural rules. The Notice included a phone number for the EEO, and attached a copy of the MSPB rules and appeal form. Furthermore, once Economou began to pursue a remedy with the MSPB, the MSPB conducted an extensive review of the status of his EEO proceedings before accepting jurisdiction. Even absent an explicit statement of the "either or" nature of the initial filing process, therefore, Economou, and his counsel, had ample opportunity to review the rele-

vant guidelines before withdrawing the MSPB appeal three months after its filing. This Court thus finds Economou's assertion that the Notice of Decision was misleading without merit.

4.  "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2)(1998).

the information gathered in these exchanges, the MSPB took jurisdiction over the case (apparently concluding that as Economou had not filed a formal EEO complaint until March 5, 1998, the MSPB had jurisdiction to act on his January 14, 1998 appeal), and dismissed the appeal as withdrawn. *Id.* at *10.

In response to Economou's March 5, 1998 formal filing, the EEO, in November 1999, notified Economou that as 180 days had passed since his filing, he was free to pursue his claims in federal court. *Id.* at *11.

### B. District Court Proceedings

Economou filed a complaint in federal district court on December 17, 1999. In an amended complaint filed on April 14, 2000, Economou alleged that the Army had discriminated against him based on his national origin, age, and disability, and had retaliated against him for his EEO activity, thus violating Title VII, the ADEA, and the Rehabilitation Act by (1) terminating his employment on December 19, 1997, (2) conducting "investigations" of him during his period of Army employment, (3) failing to reasonably accommodate his disability, (4) failing to provide training equivalent to that offered to other supervisors, and (5) failing to conduct an annual performance review in 1997.

The Army did not initially raise the defense that Economou had failed to exhaust his administrative remedies prior to bringing suit. Approximately two weeks after filing its answer to Economou's amended complaint, however, at a May 30, 2000 status conference, the Army raised the exhaustion issue. In early September 2000, the Army moved to amend its answer so as to include the exhaustion argument. The district court granted the motion as part of its December 18, 2000 opinion and order, concluding that Economou had not demonstrated prejudice, undue delay, or any other reason to deny the motion, and noting that Economou had been aware of the Army's intention to make the argument since shortly after he brought suit, defeating his claims that the amendment would detrimentally affect his trial preparation.

With respect to Economou's discriminatory and retaliatory removal claims, the district court granted summary judgment, concluding that Economou had not exhausted his administrative remedies prior to bringing suit since he had first filed formally with the MSPB and then abandoned his complaint in that forum. The court ruled that after a plaintiff elects to proceed in one forum, "thereafter the plaintiff is precluded from availing himself of the other forum." *Id.* at *18.

The district court also granted summary judgment on the investigation, reasonable accommodation, and denial of performance rating claims on the basis of lack of evidence or other defects in those claims, but allowed Economou to proceed to trial on the retaliatory denial of training claim. The jury's ultimate verdict for the defendant is not challenged on appeal.

While this Court affirms the district court's decisions on the grant of the Army's motion to amend, and the grant of summary judgment on the investigation, reasonable accommodation, and denial of performance rating claims for substantially the same reasons stated by the district court, we review the grant of summary judgment on the removal claims, and specifically the district court's determination that Economou failed to exhaust these claims in the administrative proceedings, in more detail.

### III.

■ We review the court's grant of summary judgment de novo, *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

Our affirmation of the district court's exhaustion finding relies heavily on the language of the regulations governing administrative review of equal employment claims. 29 C.F.R. § 1614 governs federal sector equal employment opportunity. Section 1614.302 explains that "[a]n aggrieved person may initially file a mixed case complaint with an agency [the EEO] pursuant to this part *or* an appeal on the same matter with the MSPB ..., *but not both*."[5] 29 C.F.R. § 1614.302(b) (1998)(emphasis added). Section 1614.107(d) emphasizes the exclusive nature of an initial filing with the MSPB or EEO by listing among the reasons for which the EEO may dismiss a complaint that, "the complaintant has raised the matter ... in an appeal to the Merit Systems Protection Board and § 1614.301 or § 1614.302 indicates that the complainant has elected to pursue the non-EEO process." 29 C.F.R. § 1614.107(d) (1998).[6]

This binding "election" between the MSPB and EEO remedies occurs as soon as a formal petition is filed in either forum. 29 C.F.R. § 1614.302(b) ("whichever [the MSPB appeal or the EEO complaint] is filed first shall be considered an election to proceed in that forum"). As § 1614.301 explains, "[a]n election to proceed [with an EEO action] is indicated only by the filing of a written complaint; *use of the pre-complaint process ... does not constitute an election for purposes of this section.*" 29 C.F.R. § 1614.301(a)(emphasis added). Thus, according to the plain language of the governing regulations, the filing of the first formal petition determines the appropriate forum for agency review.

■ As the Court's review of the procedural history in this case indicates, Economou filed his first *formal* petition on January 14, 2000 with the MSPB.[7] Under the clear language of the governing regulations, that formal filing designated the MSPB as the administrative forum in which Economou was bound to exhaust his claims.[8]

5. This Court will apply the 1998 C.F.R. because Economou filed his formal complaint with the MSPB in 1998; the pertinent rules, however, did not change between the 1997 and 1998 versions. In the 1998 provisions, "mixed case complaint" is defined as "a complaint of employment discrimination filed *with a federal agency* based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1)(emphasis added). "Mixed case appeal" is defined as "an appeal filed *with the MSPB* that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. §§ 1614.302(a)(2)(emphasis added).

6. This provision has since been renumbered as 29 C.F.R. § 1614.107(a)(4)(2001).

7. Economou attempts to argue here, as before the district court, that his prior EEO complaints should serve as sufficient "filings" to satisfy the formal filing requirement, giving the EEO, not the MSPB, jurisdiction as the initially "elected" forum. As the district court aptly demonstrated, however, Economou's prior filings were distinct from his March 5, 2000 discriminatory and retaliatory removal claims, and his January 8, 2000 contact with the EEO served only to facilitate his later complaint, not to amend any previously filed complaints.

8. Notably, ADEA claims may be pursued either after a final administrative decision is issued or thirty days after the plaintiff gives notice to the EEOC of an intent to file. This Court held in *Wrenn v. Secretary, Department of Veterans Affairs*, however, that despite these alternative means of bringing age discrimination claims to the district court, a plaintiff who chooses to begin the administrative review process is obliged to exhaust that review before filing a civil action. 918 F.2d 1073, 1078 (2d Cir.1990). Thus, because Economou filed first with the MSPB, he was bound to exhaust all his claims, including the

This conclusion is consistent with this Court's interpretation of an earlier, but parallel, version of the forum election regulation. In *Bornholdt v. Brady,* this Court read the pre–1996 version of the election provision to mean that "[t]he claimant is deemed to have elected to proceed in whichever administrative forum he has filed first." 869 F.2d 57, 62 (2d Cir.1989) (interpreting then-§ 1613.403, which stated, like 1998's § 1614.302(b), that "whichever is filed first (the mixed case complaint [EEOC] or the appeal [MSPB]) shall be considered an election to proceed in that forum"); *see also German v. Pena,* 88 F.Supp.2d 222, 225 (S.D.N.Y.2000) (finding plaintiff bound to exhaust all claims before the MSPB by initial filing of a formal complaint in that forum). Although Economou's case presents a unique factual situation in that his withdrawal from MSPB proceedings was in favor of an action before another agency rather than a claim before the federal court, the principles binding Economou to his first choice of forum are not new. As stated in the regulations and echoed in this Court's prior decisions, a plaintiff is bound to exhaust administrative remedies in the forum in which he first files a formal petition. Neither a pre-petition inquiry to another agency, nor the apparently harsh result in this case alters this rule. This Court will not bend the plain language of the regulations to allow parties to browse at will through multiple administrative reviews in search of a more favorable outcome.

### IV.

For the reasons set forth above, this Court affirms the district court's grant of summary judgment on Economou's discriminatory and retaliatory removal claim for failure to exhaust his administrative remedies, and affirms Economou's remaining claims for substantially the same reasons stated by the district court.

The judgment of the district court is AFFIRMED.

---

ADEA arguments, in the administrative arena before pursuing them in the district court.