**Michael A. PERRY, Plaintiff,**

v.

**Paul O'NEIL, Secretary of the Treasury, Defendant.**

**No. 99–CV–4920(ADS).**

United States District Court, E.D. New York.

July 30, 2002.

Michael A. Perry, Brooklyn, NY, Pro Se Plaintiff.

Alan Vinegrad, United States Attorney, by Assistant United States Attorney Gail A. Matthews, Central Islip, NY.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Michael A. Perry ("Perry" or the "plaintiff"), a former aide with the United States Customs Service, alleges that the defendant the Secretary of the Treasury (the "defendant" or the "Secretary") discriminated against him on the basis of his race, gender, national origin, age, color and religion in violation of Title VII of the Civil Rights Act of 1964. Presently before the Court is a motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative to dismiss the complaint on the merits pursuant to Rule 56(b).

## I. BACKGROUND

### A. The Plaintiff's Employment with the U.S. Customs Service

The following facts are not disputed. In 1991, the plaintiff began his employment as an aide with the United States Customs Service at JFK International Airport (the "Customs Service"). In 1992, a female co-worker made a complaint alleging that, among other things, the plaintiff touched her buttocks and offered to show her his penis. Initially, the Internal Affairs Department of the United States Customs Service ("Internal Affairs") investigated the allegations. The female co-worker eventually dropped the charges against him. Thereafter, the plaintiff underwent sexual harassment training at the Customs Service. At that time, the Customs Service provided the plaintiff with a memorandum concerning the policies which prohibit sexual harassment.

In 1995, four female co-workers made formal complaints alleging that the plaintiff touched their thighs and buttocks, requested sex, used sexually explicit language and gestures. Internal Affairs investigated these allegations. The first complainant was Sonia Diaz a sixteen year old student employed in the Customs Service's stay-in-school program. On one occasion, the plaintiff observed her wearing a pair of "short shorts" under her dress when a gust of wind blew up her dress. Shortly thereafter, the plaintiff wrote on Ms. Diaz's desk calendar a reference to her short shorts and his telephone number.

The second complainant was Christine Ingardia. In an affidavit to Internal Affairs, Ms. Ingardia stated that the plaintiff:

> [C]onstantly tried to pull me towards him by pulling my elbow and saying 'come here baby.' After each of these incidents I reacted in the same way I took his hands off of me and told him never to touch me again and not to speak to me in that way that I did not like.... His manner of speaking to me makes me very uncomfortable and very angry because I have to constantly repeat myself and tell him not to touch me or to speak to me in his sleazy manner of speaking.

Defendant's Statement of Undisputed Facts pursuant to Rule 56.1 ¶ 10 executed on June 15, 2001 (the "Defendant's Rule 56.1 Statement"). Also, Ms. Ingardia informed Internal Affairs that on April 28, 1995 the plaintiff placed his hands on her waist and buttocks at a retirement party for a colleague. In an interview with Internal Affairs, the plaintiff denied that he placed his hands anywhere on Ms. Ingardia's body but he acknowledged that he consumed an excessive amount of alcohol at the April 28, 1995 retirement party and that Ms. Ingardia accused him of touching her buttocks that day.

The third complainant was Colleen McLoughlin. In an affidavit to Internal Affairs, Ms. McLoughlin stated that:

> On occasion during this year I came into work in a dress. Michael said—Oh

you're looking fine today. Just the way he looked at me led me to believe there was something sexual about it. I told him don't look at me leave me alone. This happened about 3 times and he got the hint and stopped making those comments. He made me feel self conscious and I didn't like it. I didn't take it as a compliment. I found it insulting and I told him. There was a time about three months ago when he licked his lips at me.... [H]e licked his lips and looked at me like he wanted some, insulting demeaning me and I told him.

Defendant's Rule 56.1 Statement ¶ 14.

The fourth complainant was Karen Bermudez, a student-employee. In an affidavit to Internal Affairs, Ms. Bermudez stated that the plaintiff asked her for a picture of her in shorts and she gave him one. Also, the plaintiff told her that she had nice legs. Nonetheless, Ms. Bermudez noted that she was not offended by this conduct.

On October 17, 1995, as a result of the Internal Affairs investigation, the U.S. Customs Service Area Director of JFK International Airport Thomas Mattina proposed removing the plaintiff from his employment. In particular, Mattina wrote:

My decision to propose your removal is consistent with the U.S. Customs Service Table of Offenses and Penalties, Offense Number 23, "Disrespectful conduct" (Use of abusive, derisive, profane or other offensive statement or gesture to or about anther person, which adversely affects production, discipline or morale) which carries a penalty of 10–day suspension to removal for a third offense; Offense Number 31, "Criminal, infamous, dishonest, immoral, notoriously disgraceful conduct, or other conduct prejudicial to the Government," which carries a penalty of removal for the third offense; and Offense Number 44, "Discrimination because of race, color,

age, political affiliation, marital status, religion, sex, national origin, or handicapping condition (c) Sexual harassment (Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature)," which carries a penalty of removal for a third offense. Your prior disciplinary record indicates that you were suspended from October 29, 1991, through and including November 7, 1991, for seven specifications of absences without leave during the period May 15, 1991, through and including July 10, 1991. You were also suspended from May 9, 1994, through and including May 18, 1994, for failing to exercise restraint in your dealings with your coworkers. I also have taken into consideration that you received training regarding sexual harassment on two occasions, April 30, 1993, and September 17, 1993, and that you were counseled by your supervisor regarding your conduct towards female employees.

Defendant Rule 56.1 Statement ¶ 16.

In response to the proposed removal letter, the plaintiff obtained union representation and an attorney. On February 28, 1996, the plaintiff's representatives negotiated a "Last Chance Agreement" with representatives of the Customs Department. Pursuant to the "Last Chance Agreement", the Customs Service rescinded the October 17, 1995 notice of proposed removal and substituted a thirty day suspension.

Further, the "Last Chance Agreement" provided in relevant part:

6. During the term of this last chance agreement, any occurrence of sexual harassment, including but not limited to unwelcome sexual advances, requests for sexual favors, and/or other verbal or physical conduct of a sexual nature, will result in immediate termination of Mr.

Perry's employment with the U.S. Customs Service.

7. Should Mr. Perry fail to abide by any one of the above terms of this agreement, the Customs Service will terminate Mr. Perry effective the earliest possible date following the date of the violation of the agreement.

8. If Mr. Perry is terminated because of any violation of the terms of this agreement noted above, it is understood that all of Mr. Perry's statutory and contractual appeals, including but not limited to his appeal rights to the Merit System Protection Board, grievances and arbitration, or EEO, are hereby waived.

Defendant's Rule 56.1 Statement ¶ 18. As part of the agreement, the Customs Service transferred the plaintiff to its Mail Branch at JFK International Airport.

After he executed the "Last Chance Agreement", two co-workers, namely Customs Inspector Louise Howard and Mail Technician Maria Zacharias charged the plaintiff with making sexually derogatory and inappropriate comments. In October of 1996, the plaintiff told Ms. Howard and Ms. Zacharias that their conversation concerning the depression of buttons on a conveyor belt in the Mail Branch made him "hot and horny" and that he might think that the women wanted something.

On another occasion, the plaintiff asked Ms. Howard, who at the time had a clip in her hair, what her hair would look like if the clip was not in it. Ms. Howard took this statement to be sexually derogatory and inappropriate. One afternoon between September 15 and October 15, 1996, while working overtime with Ms. Howard, the plaintiff told her that he listened to music, similar to the jazz music that was playing to the radio, while he took a bubble bath. Ms. Howard took this statement to be sexually derogatory and inappropriate. On December 2, 1996, the plaintiff attempted to squeeze past Ms. Howard while she was kneeling even though another way to pass existed.

By letter dated May 2, 1997, the Director of Customs Management Center of the U.S. Customs Service Anthony M. Liberta advised the plaintiff that he was terminated effective May 9, 1997. The termination letter summarized the terms of the "Last Chance Agreement" and noted that the plaintiff violated paragraph 6. Also, the termination letter detailed that plaintiff's violation included: (1) telling two female co-workers that he was "horny" and that he took their conversation as inviting him to do something; (2) surmising about the type of music a female co-worker listens to when she takes a bubble bath; (3) asking a female co-worker to remove a clip from her hair; (4) suggesting that he would be welcome at the home of a female co-worker if he were locked out of his home by his wife; and (5) squeezing past a co-worker while she was working on her knees. Finally, the termination letter reminded the plaintiff that he waived his right to appeal the termination decision in the "Last Chance Agreement".

## B. The Administrative Proceedings

On May 29, 1997, the plaintiff sought counseling from the Equal Employment Office (the "EEO") in connection with his termination of May 9, 1997. On June 4, 1997, the plaintiff appealed his termination to the Merit Systems Protection Board (the "MSPB"). In his appeal, the plaintiff noted that he was terminated when he was serving a probationary period under the "Last Chance Agreement". Also, the plaintiff stated that he believed that the Union should not have let him sign the "Last Chance Agreement".

Section 32(a) of the MSPB appeal form required the plaintiff to indicate and explain if he believed that the agency, name-

ly the Customs Service, discriminated against him in connection with the matter appealed because of race, color, religion, sex, national origin, marital status, political affiliation, disability or age. A question mark was placed in the box and no additional information was provided. At his deposition, the plaintiff stated that he did not put the question mark in the box. In addition, the plaintiff noted that he had not filed a formal discrimination complaint with the Custom's Service or any other agency in connection with the matter he was appealing. In a rambling statement annexed to his application, the plaintiff stated that he was falsely accused of sexual harassment which resulted in his termination. As to the allegations that resulted in his termination, the plaintiff noted that the female co-workers's statements were untrue and that any statements that he made did not violate the "Last Chance Agreement".

On June 22, 1997, the plaintiff had his final interview with the EEO and signed his First EEO Complaint. On June 23, 1997, the plaintiff filed his First EEO Complaint with the Department of Treasury, Regional Complaint Center in Chicago, Illinois (the "Regional Complaint Center"). In his complaint, the plaintiff alleged that the Customs Service discriminated against him on the basis of his race and gender in connection with his termination. In addition, the plaintiff noted that he was terminated after being falsely accused of sexual harassment and he wanted his job back. Despite having filed an appeal with MSPB, the plaintiff noted in his complaint that he had not filed such an appeal.

On June 23, 1997, the Regional Complaint Center dismissed the plaintiff's EEO complaint because he had first chosen to challenge his termination in the MSPB. In the dismissal letter, the Regional Complaint Center noted that in accor-

dance with 29 C.F.R. § 1614.302(b) (1999), the plaintiff may file his discrimination complaint either with the agency or the MSPB, but not both. Further, the Regional Complaint Center stated that Section 1614.302(b) mandates that whichever complaint is filed first "shall be considered an election to proceed in that forum." Also, the Regional Complaint Center cautioned the plaintiff to bring the allegations of his discrimination contained in his EEO complaint to the attention of the MSPB. In addition, the Regional Complaint Center stated that this letter constituted the final decision by the Department of Treasury on his complaint. Further, attached to the dismissal letter contained a notice advising the plaintiff that he had thirty days from the date he received the letter to file a civil action in an appropriate United States District Court.

After receipt of the dismissal letter, the plaintiff did not advise the MSPB of any allegations of discrimination. Also, at his deposition, the plaintiff stated that no one involved in terminating the plaintiff ever made a racist comment to him. Further, all of the similarly situated black employees with whom the plaintiff had worked with had all been promoted since the plaintiff's termination.

On September 29, 1997, an Administrative Law Judge for the MSPB (the "ALJ") held a hearing on the plaintiff's appeal. The plaintiff and his counsel David M. Schwartz, Esq. participated in the hearing. The ALJ reviewed the "Last Chance Agreement", the termination letter and heard testimony from the plaintiff and the two female co-workers who charged him with conduct that violated the agreement.

On July 10, 1998, the ALJ dismissed the plaintiff's appeal. In doing so, the ALJ found that the plaintiff violated the "Last Chance Agreement". Also, the ALJ found that the plaintiff waived his right to appeal

his termination in the "Last Chance Agreement". In addition, the ALJ included instructions in his decision advising the plaintiff that this decision will become final on August 14, 1998 unless a petition for review is filed or the MSPB reopens the case. Finally, the instructions advised the plaintiff that if he was dissatisfied with the decision he may seek judicial review before the United States Court of Appeals for the Federal Circuit.

On August 14, 1998, the plaintiff's counsel filed with the MSPB a petition for review of the July 10, 1998 dismissal. On February 17, 1999, the MSPB denied the plaintiff's petition for review of the ALJ's decision. The MSPB stated that the initial decision in this appeal was now final. Also, the MSPB noted that the plaintiff had the right to seek review before the United States Court of Appeals for the Federal Circuit and advised him that he had sixty calendar days to seek such review after he received this order.

On March 1, 1999, the plaintiff again sought EEO counseling at the Customs Service. During the EEO counseling, the plaintiff alleged that the Customs Service discriminated against him on the basis of his race and sex in connection with an unspecified "appointment", unspecified "harassment" and his termination of May 2, 1997. Also, the plaintiff alleged for the first time that the harassment began in late 1992 when he was first accused of sexual harassment. In addition, the plaintiff complained that in 1993 his work responsibilities changed and he was not given any consideration for a computer detail for which he was qualified. Further, the plaintiff stated that certain Customs Service employees made cruel remarks to him regarding his job performance. The plaintiff raised none of the above allegations prior to March 1, 1999.

On May 8, 1999, the Regional Complaint Center issued to the plaintiff a Notice of Right to File a Discrimination Complaint regarding the matters raised during the EEO counseling in March of 1999. On May 27, 1999, the plaintiff filed his Second EEO Complaint with the Regional Complaint Center. The Second EEO Complaint was a seven page handwritten story about the impact of the plaintiff's termination on his marriage, problems he had through-out his employment and his belief that his conduct was "innocent" and did not amount to sexual harassment.

On June 11, 1999, the Regional Complaint Center dismissed the Second EEO Complaint on the grounds that the same matter was raised in the plaintiff's First EEO Complaint and in the appeal to the MSPB. Also, the dismissal letter noted that plaintiff's counsel notified the Regional Complaint Center that he no longer represented the plaintiff. Further, the dismissal letter stated that this letter constituted the final decision by the Department of Treasury on the plaintiff's complaint. A standard notice of right to appeal and notice of right to file a civil action within ninety days of the decision in an appropriate United States District Court was enclosed.

## C. The District Court Action

On August 19, 1999, the plaintiff filed a complaint against the defendant in the United States District Court for the Eastern District of New York. In his complaint, the plaintiff alleged discrimination based upon race, gender, national origin, age, color and religion in violation of Title VII of the Civil Rights Act of 1964. In particular, the plaintiff alleged that the discriminatory conduct involved the plaintiff's termination, failure to promote, unequal terms and conditions of employment and retaliation.

Presently before the Court is a motion to dismiss the complaint for lack of subject

jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, or in the alternative to dismiss the complaint on the merits pursuant to Rule 56(b). The defendant puts forth four grounds to support dismissal of the complaint: (1) failure to exhaust administrative remedies concerning the claims of discrimination based upon age, religion, national origin, color and retaliation; (2) failure to timely exhaust administrative remedies for all claims of discrimination; (3) lack of subject matter jurisdiction to review the MSPB decision; (4) waiver of right to bring this action under the "Last Chance Agreement"; and (5) failure to establish a *prima facie* case of discrimination or retaliation under Title VII. As part of its motion, the defendant served the plaintiff with a notice advising him that his claims may be dismissed if he does not respond to the motion and advised him that he must submit evidence countering the facts asserted by the defendant and raise issues of fact for trial.

## II. DISCUSSION

In addressing the present motion, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers ....' " *Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau*, 11 F.3d 21, 22 (2d Cir.1993). The Court recognizes that it must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights by virtue of her or his lack of legal training. *See Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir.1983).

Indeed, district courts should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson*

*v. Coombe*, 174 F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law ....' " *Traguth*, 710 F.2d at 95 (citation omitted).

The Court addresses the issue of jurisdiction first. For if the Court has no jurisdiction, it has no power to decide the merits of the case. *See Ruhrgas A.G. v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 1570, 143 L.Ed.2d 760 (1999) (stating that subject matter jurisdiction and personal jurisdiction go to the power of the court to adjudicate the merits of a case).

### A. The Standard of Review

With regard to a motion under Rule 12(b)(1), the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question. *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n. 6 (2d Cir.2001); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria*, 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992); *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1130 (2d Cir.1976). Under the provision of Rule 12(b)(1), the Court must accept as true all material factual allegations in the complaint, but will not draw inferences favorable to the party asserting jurisdiction. *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998); *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir.1992). Hearsay statements contained in affidavits may not be considered. *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir.1986). The defendant submitted affidavits and other material in support of its motion to dismiss. Also, the plaintiff submitted ma-

terial in opposition to the motion. The Court will consider such material to the extent they are relevant to the issue of jurisdiction.

## B. The Exhaustion of Administrative Remedies

### 1. Sovereign Immunity

It is well-settled that the United States government is immune from suit in federal court under the principle of sovereign immunity. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Such immunity extends to the agencies and officers of the United States. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). The United States Customs Service is a federal agency, and its Secretary is a federal officer.

If Congress wants to waive the federal government's sovereign immunity, it must do so with clear and unequivocal statutory language. *See United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). "If the government has not waived its sovereign immunity, or if the conditions under which the government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist" and a district court must dismiss the case. *See Dillard v. Runyon,* 928 F.Supp. 1316, 1322 (1996) (citing United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

In 1972, Congress amended Title VII of the Civil Rights Act of 1964 and waived the federal government's sovereign immunity for suits alleging discrimination in a government workplace on the basis of race, sex, color, religion or national origin. 42 U.S.C. S 2000e–16(a) (1994). However, Congress limited this waiver of immunity on the condition that government employees first exhaust their administrative remedies as defined by the statute and regula-

tions promulgated thereunder. 42 U.S.C. S 2000e–16(c) (1994); *Brown v. General Servs. Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). A federal employee's failure to exhaust administrative remedies or failure to abide by the prescribed time provisions does not trigger the waiver of sovereign immunity and a district court is deprived of subject matter jurisdiction to decide that employee's case. *Brown,* 425 U.S. at 835–36, 96 S.Ct. at 1969. The Court now turns to the question of whether the plaintiff has exhausted his administrative remedies in a timely fashion.

### 2. The Administrative Remedies

Equal employment opportunity in the federal sector is governed by 29 C.F.R. § 1614. *Economou v. Caldera,* 286 F.3d 144, 149 (2d Cir.2002). Section 1614.302 provides in pertinent part that "[a]n aggrieved person may initially file a mixed case complaint with an agency [the EEO] pursuant to this part or an appeal on the same matter with the MSPB . . ., *but not both.*" 29 C.F.R. § 1614.302(b) (1999) (emphasis added). Section 1614.107(d) explains the exclusive nature of an initial filing with the MSPB or EEO by noting among the reasons which the EEO may dismiss a complaint if, "the complainant has raised the matter . . . in an appeal to the [MSPB] and § 1614.301 or § 1614.302 indicates that the complainant has elected to pursue the non-EEO process." 29 C.F.R. § 1614.107(d) (1999).

The reason for allowing only one avenue to be pursued is that an aggrieved person is not allowed to "browse at will through multiple administrative reviews in search of a more favorable outcome." *Economou,* 286 F.3d at 150. *See also Bornholdt v. Brady,* 869 F.2d 57, 62 (2d Cir.1989) (stating that an aggrieved party is not entitled to pursue her or his "mixed case" claim in

more than one administrative forum simultaneously); *German v. Pena,* 88 F.Supp.2d 222, 225 (S.D.N.Y.2000) (same); *Khalfani v. Dep't of Veterans Affairs,* No. 93–5374, 94–0644, 94–5720, 1998 WL 817654, at *5 (E.D.N.Y. Mar.2, 1998) (same).

In the 1999 provisions which control in this case, a "mixed case complaint" is defined as "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1). Here, the plaintiff filed a "mixed case complaint" with a federal agency, namely the Regional Complaint Center. This complaint was a "mixed case" because the plaintiff alleged that the Customs Service terminated him on the basis of among other things his race and gender in violation of federal discrimination laws. As such, the plaintiff had the option of choosing either the EEO process or the MSPB forum to pursue his administrative remedies, *but not both.*

The binding "election" between the MSPB and EEO remedies takes place as soon as a formal petition is filed in either forum. 29 C.F.R. § 1614.302(b) ("[W]hichever [the MSPB appeal or the EEO complaint] is filed first shall be considered an election to proceed in that forum"). "An election to proceed [with an EEO action] is indicated only by the filing of a written complaint; use of the pre-complaint process ... does not constitute an election for purposes of this section." 29 C.F.R. § 1614.301(a). As such, the claimant's filing of the first formal petition determines the appropriate forum for agency review.

■ It is undisputed that the plaintiff filed his first formal petition on June 4, 1997 with the MSPB. As such, the plaintiff was bound to exhaust all of his claims in the administrative forum of the MSPB. *See*

*Economou,* 286 F.3d at 149. The plaintiff was required to raise in the MSPB forum all of his claims for wrongful termination, including his claim for discrimination. *See German,* 88 F.Supp.2d at 225 (stating that the "[p]laintiff's allegations of discrimination could properly be brought only before the MSPB, the agency in which he initially chose to pursue all claims that his supervisors improperly evaluated him.").

In this case, the plaintiff's appeal before the MSPB did not raise a claim of discrimination in connection with his termination. Rather, it challenged the termination solely on the basis that he did not violate the "Last Chance Agreement". The plaintiff raised the claim of discrimination only in the EEO proceedings. There, the Regional Complaint Center dismissed the EEO complaint because the plaintiff had first chosen the MSPB forum to pursue his alleged wrongful termination. The Regional Complaint Center advised the plaintiff that because he had first invoked the MSPB forum, he must raise his claim of discrimination in that forum. This, the plaintiff chose not to do.

A district court has subject matter jurisdiction only to review a final decision by the MSPB that involves a "mixed case" appeal. 5 U.S.C. § 7703(b)(1). "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2)(1999). Indeed, "in order for an MSPB decision concerning a mixed appeal to be considered 'judicially reviewable' by the district courts, the MSPB decision must reach the merits of both the appealable action and the discrimination claim." *Downey v. Runyon,* 160 F.3d 139, 144 (2d Cir.1998) (citations omitted). Because the plaintiff failed to raise his dis-

crimination claim in the MSPB, the appeal before the MSPB did not involve a "mixed case" appeal. Accordingly, the Court lacks subject matter jurisdiction to review it.

Even assuming that the appeal involved a "mixed case" appeal, the plaintiff failed to timely file either a petition for review of the final decision of the MSPB with the EEOC or timely file a civil action in district court. A petition for judicial review of an adverse MSPB final decision in a "mixed case" must be filed within 30 days of receiving notice of the Board's decision unless the individual asks the EEOC to review the discrimination issue. 5 U.S.C. §§ 7703(b)(2), 7702(a)(3).

On February 17, 1999, the MSPB sent the plaintiff and his attorney its final decision via certified mail. With no evidence to the contrary, the Court assumes that the plaintiff and his attorney received the final decision by February 20, 1999. *See Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir.1996) ("Normally it is assumed that a mailed document is received three days after its mailing."). The plaintiff filed a civil action in this Court on August 19, 1999. The plaintiff has filed no other civil actions. Also, the plaintiff never filed a petition for review of the MSPB decision with the EEOC. Accordingly, the Court lacks subject matter jurisdiction to review the MSPB decision because the action was not filed within 30 days of February 20, 1999.

### 3. Equitable Tolling

The doctrine of equitable tolling may be invoked when: (1) the claimant actively pursued her judicial remedies in the prescribed time period; (2) she was induced or tricked by her adversary's misconduct into allowing the deadline to pass; (3) the court leads a plaintiff to believe that she has done all that is required; (4) the plaintiff has received inadequate notice; or (5)

when a motion for the appointment of counsel is pending. *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 11–12 (2d Cir.1994). Equitable tolling is not available when it is the fault of the claimant for failing to exercise due diligence in meeting the filing deadlines. *Id.* at 12.

Federal law controls whether a Title VII plaintiff may benefit from equitable tolling and courts have permitted such tolling "only sparingly." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990);. *Dillard v. Runyon*, 928 F.Supp. 1316, 1325 (S.D.N.Y. 1996) (stating that "[e]quitable tolling is not available when the claimant herself fails to exercise due diligence"); *Bumpus v. Postmaster General*, No. 86–1166, 1987 WL 34255, at *5 (S.D.N.Y. Dec. 30, 1987) (stating that equitable relief from an untimely filing should be rarely granted on claims against federal government).

The plaintiff does not argue that the doctrine of equitable tolling should apply in this case and the Court finds no reason to apply it for the following reasons: The plaintiff did not actively pursue his judicial remedies during the prescribed time limits; there is no evidence that the government tricked him into missing the deadlines; no court has lead the plaintiff to believe that he has done all that is required; the plaintiff received notice of his right to seek judicial review upon each dismissal of his various complaints during the administrative process. Based upon the evidence in the record, the Court finds that the only reason for the plaintiff's failing to exhaust his administrative remedies and to timely file his complaint in federal court was his own lack of due diligence. As such, the doctrine of equitable tolling does not apply in this case.

### III. CONCLUSION

Based upon the foregoing, it is hereby

ORDERED, that the motion to dismiss the complaint for lack of subject matter jurisdiction on the ground that the plaintiff failed to exhaust his administrative remedies in a timely fashion is **GRANTED;** and it is further

ORDERED, that the complaint is dismissed; and it is further

ORDERED, that the Clerk of the Court is directed to close this case.

**SO ORDERED.**